## Manhattan Oil Company *vs.* The Camden and Amboy Railroad and Transportation Company.

Where one transportation company receives from another, freight to be carried from one place to another, under a contract between the latter and the owner, it is entitled to the benefit of all stipulations in such contract affecting its liability.

Thus where freight was delivered to a company, at Cincinnatti, under a contract between the latter company and the owner, to receive the same and carry it to New York, for a specified hire and reward, which contract contained a provision that the company receiving such freight should not be

liable for damage or loss by fire, or other casualty, while the property was in *depots* or *places of transhipment;* and the property, after being carried by said company to Philadelphia, was delivered to the defendants, to be carried by it to New York, and there delivered; and the same, having been carried by the defendants to New York and stored in its freight house, there, on the evening of its arrival, was destroyed by fire, the same night, without any negligence on the part of the defendants, and before any notice of its arrival had been given, to the owner; *Held,* that as the company receiving the property at Cincinnatti would not, under these circumstances, be liable for the value of such property, neither was the defendant liable.

ON the 27th June, 1864, at Cincinnati, in the state of Ohio, James B. Grant, the plaintiffs' agent, delivered to the Union Transportation and Insurance Company, a corporation of the state of Pennsylvania, engaged in the business of transporting freight as carriers for hire, forty barrels, containing sixteen hundred gallons of lard oil, the property of the plaintiffs, for transportation to New York, and received and accepted from said company a bill of lading therefor, which he forwarded, with an invoice of said merchandise, to the plaintiffs, at New York, who received the same in due course. The bill of lading declared that the merchandise was to be transported by the said Union Transportation and Insurance Company, until the same reached New York, upon the terms and conditions therein set forth, one of such conditions being that the company should not be liable "for damage or loss by fire or other casualty " while the merchandise was " in depots or places of transhipment." Pursuant to the agreement contained in the bill of lading, the said Union Transportation and Insurance Company transported the said merchandise in its own cars, in charge of its own employees, over the various railroads in its customary route between Cincinnati and New York, including the railroad of the defendants from Philadelphia to South Amboy, and at this latter point delivered the same on Saturday, the 9th July, 1864, for transportation to New York city, upon the steamboat *Transport*, owned by the

defendants, and employed by them, as part of their regular line, in the carriage of freight between Philadelphia and New York. The defendants received the plaintiffs' merchandize upon their railroad and steamboat, for transportation to New York, according to their usual course of business with the said Union Transportation and Insurance Company, and upon the understanding and agreement with said company, and other carriers, who aided in the transportation of said merchandise, that the defendants should collect the entire freight upon said merchandise from Cincinnati to New York, and pay the same over to the said Union Transportation and Insurance Company, to be thereafter distributed and apportioned as should be just and equitable. The defendants duly and safely transported the merchandise to, and delivered the same at, their usual and only landing place and regular freight depot, erected on pier No. 1, North river, in the city of New York, where all merchandise carried by them, or by the said Union Transportation and Insurance Company, to or from said city, was accustomed to be received, landed and deposited, ready for transportation or delivery; and the same was, after working hours on said 9th July, 1864, deposited in said depot, upon said pier, ready for delivery to said plaintiffs, upon the payment of the freight specified in the bill of lading. During the night between Sunday, July 10, and Monday, July 11, before the plaintiffs had any notice of the arrival of the merchandise, or opportunity to remove it, the pier and depot with its contents, including such merchandise, was wholly destroyed by fire, and such destruction was not occasioned by the design or negligence of either party. This action was brought to recover of the defendants the value of the oil. Upon these facts, the court (CLERKE, J.) before whom the case was tried at circuit, held, as matter of law, that the defendants were entitled to judgment. Judgment was accordingly entered for the defendants for their costs and

disbursements, amounting to $218.73. The plaintiffs excepted to the legal conclusion of the court appealed from the judgment to the general term.

*Edwards & Odell,* for the appellants. I. This court has twice, (at least,) decided that an express company's receipt, similar in form and substance to the receipt or bill of lading in this case, does not constitute an *agreement* between the company and the shipper. It is *only* a receipt, with *notice* of the terms on which the company is willing to undertake the transportation of the goods. (*De Barre* v. *Livingston,* 48 *Barb.* 511. *Belger* v. *Dinsmore,* 34 *How.* 421.) A long series of decisions in this state and elsewhere has settled these two propositions: 1. The common law liability of a common carrier can only be abridged by *express contract.* 2. *Notice* of a restricted liability, however distinct, though brought home to the actual knowledge of the shipper, is not sufficient—is not evidence of the shipper's assent—nor can a special agreement be inferred therefrom. (*Hollister* v. *Nowlen,* 19 *Wend.* 234. *Nevins* v. *Bay State Company,* 4 *Bosw.* 225. *Rawson* v. *Penn. Railroad Co.,* 2 *Abb. N. S.* 220. *Dorr* v. *N. J. Co.,* 11 *N. Y. Rep.* 485. *Bissell* v. *N. Y. C. Railroad Co.,* 25 *id.* 442. *F. and M. Bank* v. *Transportation Company,* 23 *Vt. Rep.* 186, 205. *York Co.* v. *Central Railroad Company,* 3 *Wall U. S.* 113. 10 *N. H. Rep.* 487. 10 *Metc.* 479. *Prentice* v. *Decker,* 49 *Barb.* 21. *Limburger* v. *Westcott, Id.* 283, *&c.*) "Without attempting to draw nice distinctions to show when special bills of lading or receipts may be so treated by the owner of the goods as to amount in legal effect to special contracts, it may be sufficient to say that, according to the recent decisions in this state, the law will not *imply* the owner's assent to the qualifications which they may contain; nothing less than *express agreement* upon his part will suffice to relieve the carrier from his otherwise legal risks." (*Woodruff, J. in Mercantile Ins. Co.* v.

*Chase,* 1 *E. D. Smith,* 138.)   Whenever a carrier has been released from liability by the terms of a receipt or bill of lading, the evidence has shown " a special contract limiting his liability *at time of acceptance,*" or " a notice brought home to the knowledge of the owner of the goods *at the time,* or *before the delivery* of the goods, and assented to by him." (*Redfield on Railways,* 2d ed. 270.   *Cases supra. Moriarty* v. *Harnden's Express,* 1 *Daly,* 227.   *Moore* v. *Evans,* 14 *Barb.* 524.)

II. There was no such agreement between the Union Express Company and the plaintiffs in this case, nor was there any assent on the part of the plaintiffs from which an agreement can be implied.   The receipt was not issued to the plaintiffs' agent until two days after the delivery of the goods, and probably after they had been sent forward from Cincinnati.   The stipulation recites that the oil was delivered for shipment " on or about the 27th day of June," and the receipt shows that it was shipped on June 25.   The receipt was issued June 27.

III. If it shall be held that the foregoing objection is not well taken, we say the only agreement made by the plaintiffs for the carriage of the oil was made with the Union Company.   To that the defendants are not parties. It was not made by their agent, nor by their authority, nor for their benefit, except as hereafter stated; nor does the case show that it came to their possession, or that they had knowledge of it, at any time prior to the commencement of this suit.   The Union Company was not, in any sense, the defendants' agent in procuring this oil for transportation, or in contracting with the plaintiffs in reference to it.   It was the plaintiffs' agent, entrusted with the plaintiffs' goods, and undertaking, within certain limits, to deliver those goods safely at New York.   In the leading case of the *New Jersey Steam Navigation Company* v. *Merchants' Bank,* (6 *How.* 344,) the Supreme Court of the United States held that Harnden, the expressman,

Manhattan Oil Co. *v.* Camden and Amboy R. R. and Transportation Co.

was the agent of the bank, and that the bank was bound by his contract with the steamboat company. In *Stoddard* v. *L. I. R. R. Co.*, (5 *Sand.* 180,) the Superior Court decided that the owner of goods delivered to expressmen for transportation was bound by any agreement they might make with carriers for such transportation. So here, the Union Company might have bound the plaintiffs by a special contract with the defendants; but no such contract was made. The bill of lading was intended to define the nature, the terms, and the liabilities of the Union Company's agency; nothing more.

IV. A receipt, or bill of lading, or notice, is construed strictly against the carrier, and liberally in favor of the shipper. "The rule of construction as to exceptions is, that they are to be taken most strongly against the party for whose benefit they are introduced." (*Curtis, J. in Avery* v. *Merrill*, 2 *Curtis*, 11.) "The language must be taken most strongly agsinst the defendants. The instrument is executed by them alone. It was drawn up with care, in language selected by themselves, the blank form having been printed in advance, ready to be presented to all persons offering property for transportation. The restrictions were for their benefit. The owners of packages sent by express rarely examine with care, or indeed have an opportunity to critically consider, the terms of the receipt presented to them." (*Sawyer, J. in Hooper* v. *Wells*, 5 *Am. Law Reg. N. S.* 23, citing *Ch. J. Gibson, in Atwood* v. *Trans. Co.*, 9 *Watts*, 88.)

V. Reference to a few general principles will aid in giving a correct construction to the bill of lading in this case. 1. A carrier may contract to transport goods beyond the terminus of his own route. 2. He may stipulate for a restricted liability for himself, and leave the common law liability of connecting carriers unaffected. 3. Or he may provide that the qualified liability shall extend to connecting carriers. 4. Or that it shall extend to

some, fully, or to all, partially, &c. All these are involved in the general proposition, that competent parties may define the terms of the contract which they make.

VI. The bill of lading in this case is peculiar, and somewhat novel. It contains whatever agreement was made by the plaintiffs. It expresses the conditions limiting the liability of the Union Company. It assumes the necessity of the use or employment by the Union Company, in the fulfillment of said agreement, of "connecting lines," and it specifies plainly to what extent the general liability of such "connecting lines" shall be qualified. 1. All the conditions and exemptions are made applicable to the Union Company. 2. Those that relate to loss or damage to the oil, while in transit, are confined to the Union Company in express terms. The language is, "To be transported by the Union T. and I. Co." "That the Union T. and I. Co. shall not be liable," &c. The plaintiffs agreed to exempt no other party. 3. The rights of "connecting lines" are then agreed upon and settled. A receipt for the oil, in "good order," shall discharge them from liability for "deficiency in packages." If they become liable for loss, they "shall have the benefit of an insurance" upon the property destroyed. No further stipulation in their behalf was asked for by the Union Company, or assented to by the plaintiffs.

VII. If the bill of lading had provided that its several provisions should extend to, and enure to the benefit of, any party who might undertake the carriage of the oil over any portion of the route, the only question would be, Is the loss within any of the exceptions? Or, if it had referred to the Union Company alone, and been silent as to other carriers, it would have afforded a plausible argument in favor of these defendants. But neither is the case. The terms of the agreement are explicit. The Union Company shall not be liable for leakage, delay, collision or fire. The defendants shall not, in a certain

event, be liable for deficiency, and in case of loss, shall be entitled to insurance held by the plaintiffs. Why was special provision made for the defendants' indemnity in these two particulars if all the stipulations of the agreement were intended to be for their benefit and protection ? *Expressio unius, &c.* " Where parties have entered into written agreements with express stipulations, it is manifestly not desirable to extend them by any implications; the presumption is, that having expressed some, they have expressed all the conditions by which they intend to be bound under that instrument." (*Broom's Legal Maxims*, 582, *marg.*)

VIII. That the fire clause was inserted for the protection of the Union Company only, and intended to be limited to it, is placed beyond doubt by reference to the character of that company, and the manner in which it was to perform its contract for the carriage of the oil. It was an express company—a " fast freight line," running over various routes—owning its own cars, but wholly dependent for motive power upon the companies over whose roads it operated. For carriage by water it relied upon the vessels of other carriers. There was neither railroad, nor steamboat, nor depot anywhere, over which it had control. As a vehicle of transportation, it was largely, if not completely, in the hands and power of the carriers which it patronized. Its cars could move only as and when those carriers chose to move them. Its freight was deposited in places which those carriers provided or selected. The time consumed, the means employed, the dangers incurred in the use of those means, in the transit of freight, were alike beyond its regulation or control. Collision and fire, especially, were perils to which it was apt to be exposed by the mismanagement or neglect of other parties. It is not strange, therefore, that in undertaking to transport merchandise between distant points, the Union Company should contract for its own

exemption from liability as insurers against casualties, which, though not inevitable, it could not even attempt to prevent. And it is significant, that the exemption from loss by fire is limited to places where the merchandise would be, if at all, least under the control of the employees of the Union Company and most exposed to danger.

IX. The judgment should be reversed, and the plaintiffs should have judgment for the value of the oil, with interest and costs.

*Charles F. Sandford*, for the respondents. I. The bill of lading, issued by the Union Transportation and Insurance Company to, and accepted by, the plaintiffs' agent, Grant, acting on their behalf, constituted a special contract by the terms and conditions of which both parties thereto were bound in law. 1. It is now incontrovertible that a carrier may, by *special agreement,* contract with reference to the transportation of goods, and thus secure exemption from liability not arising from his own fraud, or culpable negligence. From the long list of cases, English and American, which may be cited in support of this proposition, the following are selected: *Harris* v. *Packwood,* (3 *Taunt.* 264;) *N. J. Steam Nav. Co.* v. *Merchants' Bank,* (6 *How. U. S.* 382;) *Parsons* v. *Monteath,* (13 *Barb.* 353;) *Moore* v. *Evans,* (14 *id.* 524;) *Dorr* v. *N. J. Steam Nav. Co.,* (1 *Kern.* 485;) *Wells & Tucker* v. *The Steam Nav. Co.,* (4 *Seld.* 375;) *Mercantile Mut. Ins. Co.* v. *Calebs,* (20 *N. Y. Rep.* 173;) *Wells* v. *N. Y. Central R. R. Co.,* (24 *id.* 181;) *Bissell* v. *New York Central R. R. Co.,* (25 *id.* 442;) *The Peninsular and Oriental Steam Nav. Co.* v. *Shand,* 11 *Jur.* 771.) 2. In all the reported cases, both in England and America, where the questions involved have arisen upon a bill of lading, issued by the carrier, and accepted by the shipper, concurrently with the delivery of the goods, such bill of lading has been held to constitute a special

contract between the carrier and the shipper. (*See Great N. R. Co.* v. *Morville*, 21 *L. J. R. Q. B.* 319; *York, &c. R. Co.* v. *Crisp*, 14 *C. B. R.* 527.) The stipulation of the parties and the findings of the court recognize and establish the fact of an "agreement contained in said bill of lading."

II. By the special contract thus entered into, the Union Transportation and Insurance Company undertook the transportation of the plaintiffs' merchandise (for the agreed price) from the place of shipment (Cincinnati) to the place where consigned (New York.) 1. The terms of the contract are explicit; and it is expressly admitted that the carrier undertook the transportation of the plaintiffs' merchandise from Cincinnati to New York, the point named in the bill of lading. 2. Besides, the contract contains a charge for the carriage of the merchandise to New York. And wherever a carrier agrees to a rate of charge, (whether payable at the beginning or end of the journey,) for which the goods are to be transported to a particular place, he is, in law, held as undertaking the carriage of the goods to, and as responsible, (subject to the restriction contained in the contract,) for their safe delivery at, the place so designated. (*Weed* v. *Saratoga and Schenectady R. R. Co.*, 19 *Wend.* 534. *Merchants' Bank* v. *Champlain Tr. Co.*, 23 *Ver. R.* 186, 209. *Muschamp* v. *Lancaster and Preston R. R. Company*, 8 *Mees. & Welsb.* 421. *Wilcox* v. *Parmelee*, 3 *Sandf.* 610. *Mallory* v. *Burrett*, 1 *E. D. Smith*, 248. *Hart* v. *The Rensselaer and Saratoga R. R. Co.*, 4 *Seld.* 37. *Krender* v. *Woolcott*, 1 *Hilt.* 223. *Dillon* v. *N. Y. and Erie R. R. Co.*, *Id.* 231. *Scothorn* v. *The South Staffordshire R. Co.*, 8 *Exch.* 341. *Collins* v. *Bristol and Exeter R. Co.*, 25 *L. J. R. Exch.* 185. *Ex. Chamb.* 26 *id.* 103. 1 *H. & N.* 517. *House of Lords*, 29 *L. J. R. Exch.* 41. 7 *House of Lords Cases*, 194. *Welby* v. *The West Cornwall R. Co.*, 27 *L. J. R. Exch.* 181. *Mylton* v. *The Midland R. Co.*, 28 *id.* 385. 4 *H. & N.*

615.   *Coxon* v. *The Great Western R. Co.*, 29 *L. J. R. Exch.* 165.   5 *H. & N.* 274.)

III. The bill of lading being a through contract, and the Union Transportation and Insurance Company having transported the plaintiffs' merchandise under the same to New York, over the various railways, including the railroad and line of the defendants, between Philadelphia and New York, the defendants, equally with the Union Transportation and Insurance Company, are entitled to all the exceptions and immunities which the contract contains. 1. Either the defendants were *parties* to the contract contained in this bill of lading, as joint participators in the service and the freight paid therefor, the same having been entered into as regards their portion of the route by the Union Transportation and Insurance Company, acting in that behalf for the common benefit, and as *their agents ;* or the defendants were the agents of the last named company, in the performance of its contract, as respects so much of the entire route as lies between the cities of Philadelphia and New York. (*Scothorn* v. *The South Staffordshire Railway Company,* 8 *Exch. R.* 341. *Muschamp* v. *Lancaster, R. R. Co.,* 8 *Mees. & Welsb.* 421. *Watson* v. *The Ambergate R. R. Co.,* 15 *Jur.* 448. *Hart* v. *Rensselaer and Saratoga R. R. Co.,* 4 *Seld.* 37. *Mallory* v. *Burrett,* 1 *E. D. Smith,* 234.) In any view of the case, the defendants were acting under and in subordination to the contract, at a fixed rate of compensation, prescribed by it ; and they can, therefore, be charged only with its performance and with the liabilities it in law imposes. 2. Any other or different rule would operate harshly and unjustly as against the defendants, who undertook the duty with reference to the compensation specified and the risk prescribed. The compensation is to be deemed in law to have been fixed *with express reference to the risk.* (*Dorr* v. *N. J. Steam Nav. Co.,* 1 *Kern.* 485, 492. *Mercantile Mut. Ins. Co.* v. *Chase,* 1 *E. D. Smith,* 115, 126.) And the shipper who secures to himself

a through rate of freight, reduced in proportion as his risk is increased and that of the carriers is diminished, should be deemed to have estopped himself from asserting against any carrier a liability voluntarily assumed by himself, when he stipulated for the rate of freight by which that carrier's compensation is measured and determined. In *Collins* v. *The Bristol and Exeter Railway Company,* (25 *L. J. R. Exch.* 185,) the contract (which exempted the risk of fire) was to carry from Bath, on the Great Western Railway to Torquay, a station on the South Devon Railway, passing over, between the lines of these two companies, the line of the Bristol and Exeter Company. The goods were destroyed by fire while in the possession of the Bristol and Exeter Company. The court of exchequer decided, that there being a contract with the Great Western Railway Company to carry the goods to Torquay, "the condition as to fire extends to, and protects from, such loss during the entire journey. We think, therefore, that no action is maintainable against any one of the companies, and a nonsuit ought to be entered." On appeal, the House of Lords, (29 *L. J. R. Exch.* 41,) affirmed the judgment of the court of exchequer. The Lord Chancellor was of opinion that the contract being to carry to Torquay, the goods were carried on the defendants' railway *under the contract;* and that the defendants were consequently either not liable at all, as no agreement was entered into with them, or, if the contract in any way attached to them, the exemption as to loss by fire accompanied it, and exonerated them from liability. In this opinion Lord Brougham concurred. In *Coxon* v. *The Great Western Railway Company,* 5 *H. & N.* 274,) a lot of cattle were received by the Shrewsbury and Hereford Railway Company, at the Craven Arms station, to be forwarded to Birmingham, a station on the Great Western Railway Company. The Shrewsbury and Hereford Railway Company fixed a through rate of charge, which was entered in the contract, the

84 CASES IN THE SUPREME COURT.

Manhattan Oil Co. *v.* Camden and Amboy R. R. and Transportation Co.

amount to be paid at the end of the journey. There were certain conditions inserted in the contract, the fourth condition being in the following terms : "For the convenience of the owners, the company will receive the charges payable to other companies for conveyance of such cattle over their lines of railway, but the company will not be subjected to liability for any loss, delay, default or damage arising on such other railway." The cattle were injured on the Great Western Railway Company's line, against which company an action was brought to recover the loss. The court of exchequer unanimously held, that the contract was for the carriage of the cattle to Birmingham; that the risk of the carrier under the condition ceased when the cattle reached the line of the Great Western Railway Company; that the cattle were carried over the line of that company under the contract; and the carrier being relieved of all risk of carriage (the same having been undertaken by the plaintiff,) while the cattle were being carried over the portion of the route embraced in the Great Western Railway Company's line, on which portion of the journey the cattle were injured, the plaintiff was not entitled to recover. The same rule of law has been applied and enforced in the courts of this state, in numerous cases at *nisi prius,* growing out of the same fire in which the plaintiffs' oil was destroyed, and it has, almost uniformly, been held that the defendants are protected by exemption clauses, contained in bills of lading issued by other companies, at the west, and which provide for the transportation of merchandise to New York.

IV. The defendants being thus entitled to the benefit of the restrictions and limitations contained in the contract, one of which is an exemption from liability for loss by fire, and it appearing that the plaintiffs' oil was destroyed by fire while in the defendants' depot, and that such loss was not attributable to negligence on the part of either party, the plaintiffs' action cannot be maintained.

Manhattan Oil Co. *v.* Camden and Amboy R. R. and Transportation Co.

*By the Court,* MULLIN, J. The oil which is the subject matter of this action was delivered to the Union Transportation and Insurance Company at Cincinnati under a contract between it and the plaintiffs' agent to receive said oil and carry the same to the city of New York, for certain hire and reward in such contract specified. It was provided, in and by said contract that the said Union Transportation and Insurance Company should not be liable for damage or loss by fire or other casualty while said property was in depots or places of transhipment.

The said oil was carried on the cars of said Union Company, over the railroads between Cincinnati and Philadelphia, at which place it was delivered to the defendants to be carried to and delivered at the city of New York. It was carried over the defendants' railroad to South Amboy, and there put on board a steamboat owned by the defendants, in the usual course of business, and by such vessel carried to New York and stored in the freight house of said defendants, on Sunday evening, July 10. And between that time and the morning of the 11th of the same month, the said freight house and the said oil were destroyed by fire, without any negligence on the part of the defendants.

No notice of the arrival of said property was given to the plaintiffs before the destruction by said fire.

If this action was against the Union Company, it is quite clear that no recovery could be had against it, as the property was, within the exception of the contract, destroyed while in a depot, awaiting delivery to the owner. The liability of the carrier was not terminated at the time of the fire. No notice of the arrival of the property had been given; and until that was done, the responsibility of the carrier continued. This being so, the question is, whether the defendants were liable for the loss of the

property, as carrier, wholly irrespective of the contract with the Union Company?

The contract with the Union Company provided for the transportation of the oil from Cincinnati to New York, and until the expiration of a reasonable time for its removal, after notice to the owner, of its arrival. The defendants are not liable on that contract. It was not a party to it.

Upon what principle, then, is it liable? It is said that, it being a common carrier and receiving the property, as such, to be carried, the law authorizes the owner to elect to pursue it, instead of the company with which the contract was made. Such a proposition should rest upon the clearest principles, or the highest authority. No case has been cited, nor can one be found, establishing any such proposition.

The defendants received the goods from the Union Company, to be carried under its contract with the owner, and it was entitled to the benefit of all stipulations in such contract affecting its liability. As the Union Company would not on the facts proved, be liable for the property, neither would the defendants be liable.

The judgment must therefore be affirmed.

[New York General Term, November 2, 1868. *Ingraham, J. F. Barnard* and *Mullin*, Justices.