THE ÆTNA INSURANCE COMPANY, Appellant, *v.* WILLIAM A. WHEELER and others, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

An exemption from the ordinary liability of a common carrier, provided for in a bill of lading given by one carrier, does not enure to the benefit of a connecting carrier, where the contract is merely for delivery to the latter for further transportation. And this is so where a contract exists between the two carriers for the reciprocal transportation of freight and the division of the receipts, and the shipper has paid through charges.

Where a carrier, having to deliver goods to the defendants, connecting carriers, for further transportation, placed them in the defendants' warehouse, and notified them of the fact,—*Held*, that there was a delivery to the defendants; and that this was so, notwithstanding the two carriers used the warehouse in common in the transhipment of goods to each other's lines.

Nor does it alter the case if an agent, employed by the delivering carrier, moves the freight to the warehouse, where such agent is in the pay of both carriers for the moving of freight between them.

A bill of lading, given at Milwaukie for goods consigned to consignees at Ogdensburgh, on the margin of which there is an address to parties at Boston, and upon which the freight charges to Boston are paid in full, and where the carrier has connections at Ogdensburgh extending to Boston, and an agreement for transportation of its freight there, undertakes to deliver at Ogdensburgh only, to be forwarded.

THIS was an appeal by the plaintiff from a judgment for the defendant, entered upon the report of a referee.

The action was brought to recover an amount paid by the plaintiff for insurance upon a quantity of flour, which had been destroyed by fire at Ogdensburgh, while awaiting transportation from that place to Boston. It appeared that one Brigham and another had obtained an insurance on the flour, which they shipped from Milwaukie by the Northern Transportation Company, taking the following bill of lading, viz. :

"Shipped, in good order and well conditioned, by A. G. Hale, as agent and forwarder, for account and risk of whom it may concern, on board propeller City of New York, C. J. Chadwick, master, now lying in the port of Milwaukie, and bound for Ogdensburgh, the following articles, marked and numbered as per margin, and which are to be delivered in like good order and condition (the leakage of oils, molasses, liquors and other liquids, and the dangers and accidents of navigation, fire and collision, excepted), without delay, unto consignees at Ogdensburgh, paying freight and charges."

There was written on the margin, "H. W. Chickering, Boston, care of George A. Eddy, agent, Ogdensburgh." "Freight to Boston, $1.10 per bbl. ;" also a memorandum of the flour shipped.

It also appeared that the defendants were operating a railroad as common carriers from Ogdensburgh, and that a contract existed between the transportation company and the defendants for the transportation of through goods reciprocally over their respective lines, and for division of the freight charges.

The flour was destroyed by fire while in a warehouse at Ogdensburgh, and the plaintiff, having paid the insurance, brought this action. The remaining facts appear in the opinion of the court.

*L. Hasbrook*, for the appellant.

*G. B. Hibbard*, for the respondents.

Present—MILLER P. J., POTTER and PARKER, JJ.

POTTER, J.   The defendants claim that their liability is limited by the exception in the bill of lading given by the Northern Transportation Company at Milwaukie, and that they are therefore not liable in this action for the loss of the flour; and it is an undoubted rule of law, that where a common carrier, undertaking to convey goods beyond its own line, limits its liability generally in the contract for transportation, other and connecting carriers, over whose lines the goods subsequently pass, shall have the advantage of that limitation. (*Bristol and Exeter Railway* v. *Collins*, 7 H. L. C., 194; *Manhattan Oil Co.* v. *Camden, etc., Railroad*, 5 Abb., N. S., 290; 52 Barb., 72.)   But the exemption in this bill of lading was effective only until the delivery of the flour to the consignee at Ogdensburgh.   That consignee, as appears by the bill of lading itself, was George A. Eddy, the agent of the Northern Transportation Company, and the flour had passed through his hands before its destruction.   So the exemption had expired of itself, and there is nothing inconsistent or illegal in a carrier's limiting his liability for a portion only of his route and sustaining it for the remainder, nor in his contracting for an exemption for himself where the property is to pass over several connecting lines, and leaving the rest to their common-law liabilities.   I think, therefore, that the provisions of the bill of lading put no obstacle in the way of the plaintiffs' recovery.

The plaintiff has claimed that the *pro rata* arrangement between the Northern Transportation Company and the defendants is sufficient to render the defendants liable, irrespective of the question of delivery.   But this can be only by way of partnership, and it is quite clear that there was no such partnership between the Northern Transportation Company and the defendants as would make them liable to be sued jointly for a loss occurring upon any part of the route formed by the lines of both.   The case of *Champion* v. *Bostwick* (18 Wend., 329; 7 Hill, 292) was very different, and the law upon this question is, as it seems to me, very correctly stated in *Stratton* v. *The N. Y. and N. H. R. R. Co.* (2 E. D. Smith, 187).

The question remains, had the flour been delivered to the defendants so as to make them liable for its loss, and it is my opinion that it had. The referee finds that the warehouse in which it was stored was the property of the defendants, and was used by them for the purposes of the railroad. He also finds that the defendants were duly notified of its arrival, and that it had been placed in their warehouse, which was so constructed that freight was loaded from it directly upon their cars. There it remained for ten days, until it was destroyed by fire. If these were all the facts, there would be no question of the defendants' liability within the principle of numerous cases, notably one in which the opinion was written by the chief justice of this department. (*Coyle* v. *The Western R. R.*, 47 Barb., 152.) Nor does the fact that the warehouse was also used by the Northern Transportation Company in the transhipment of westward bound freight from the defendants' cars to their propellers, at all, to my mind, affect the question of delivery. The case would, so far, be very like the case of *Converse* v. *The N. and N. Y. Transportation Co.* (33 Conn., 182). There the railroad company owned a wharf, supporting a shed and platform, alongside of which their tracks were run, and which were also used by the transportation company upon the payment of rent, and the custom was for the transportation company to unload freight from their steamers, place it upon the platform and notify the railroad company, by whom it was loaded upon the cars and carried away; and for the railroad company to do the like with freight destined for the boats. And it was held that goods which had been unloaded from the boats upon the platform, and of which the railroad company had been notified, had been delivered to it so as to render it liable for their loss. In this case the wharf, building and tracks were in the like position, the flour was deposited in the like manner, and the defendants had been notified. It is difficult to see how the fact that the warehouse was also used for the transhipment of freight destined for the pro-

pellers, can at all affect the question of the delivery of freight destined for the cars.

But the referee also finds that the freight was "handled" from the propellers to the warehouse, and from the warehouse to the cars, by one J. M. Chamberlain, who was employed for that purpose by the Northern Transportation Company, though half paid by the defendants; and it is claimed, and the referee seems to have placed his decision upon that theory, that the flour had, therefore, not been delivered to the defendants. The word used is "handled." It means only the moving of the goods from the propellers into the warehouse, and from thence, when it suited the defendants' convenience, into the cars. It does not imply any control over the goods while in the warehouse, any more than would belong to a machine, if one had been used to move the goods. The referee's findings abundantly bear out this construction; and the testimony shows that the goods were bestowed in the warehouse according to the defendants' directions. The naked facts remain, that the flour stood in the defendants' warehouse awaiting their orders for transhipment, and theirs only, and that they had been notified of its situation.

If the "handling" from the warehouse to the cars was to be done by the defendants, the case would be precisely like that of *Converse* v. *The N. and N. Y. Co.*, above cited, and the delivery to the defendants perfect. Let us see then by whom this "handling" was to be done. There is a discrepancy here between the referee's findings in his decision and in the case. In the former he finds that it was to be done by J. M. Chamberlain; in the latter by the transportation company. But as he also finds in the case, that the arrangement with Chamberlain was made by the transportation company, it is fair to presume the former finding to be but a more detailed statement of the latter. It will appear, then, from the findings, that Chamberlain was employed by both carriers to do the handling of the freight from the pro

pellers to the cars, and from the cars to the propellers. The fact that the arrangement with him was made by the transportation company alone does not affect this question, because authority from the defendants is to be fairly presumed from their paying half the compensation, and is abundantly shown by the evidence. If then the labor of moving freight from the warehouse to the cars was work which it properly belonged to the defendants to do, I think Chamberlain must be held to be the defendants' employe for the purpose of that work. I am also of the opinion that that work naturally should have been done by the defendants.

The Northern Transportation Company was not bound to do all the work of transhipment from the propellers to the cars. At least half of that work belonged to the defendants, and that presumably the half at their end.

The Northern Transportation Company had done everything in their power to perfect a delivery. They had deposited the flour in the defendants' warehouse, and had notified them, and by the established rule of all the decisions their liability as carriers had ceased.

The goods were presumably under the control of the defendants because placed in their warehouse, and under their orders to be laden upon their cars; and because no one else had any control over them, except under their orders as to the "handling."

It appears then that this flour was placed in the defendants' warehouse for transportation over their road, and according to the established course of their business; that they had been notified of its position; that it was awaiting their orders, and was to be loaded upon their cars by their employe. The fact that that employe was also employed to do other work by another carrier does not make him the less in their service; nor will they be allowed to shift their responsibility by mingling their labor with that of other carriers, and having one person employed to do the whole.

Admitting, however, for the sake of the argument, that the flour was in the possession and under the control of J.

M. Chamberlain, I am still of the opinion that the defendants are liable. J. M. Chamberlain was not a common carrier; and taking into account the arrangement in regard to the through freight, which the referee has found to have existed between the transportation company and the defendants, I think that he must be considered to have been in their joint employ, and that his possession was theirs; otherwise, by such an employment, there might be a time when neither of the parties would be liable for loss. Each party might throw the blame upon their handler and agent. They would, therefore, be jointly liable; but the non-joinder not having been pleaded the defendants are liable separately.

The result is that the judgment must be reversed.

Judgment reversed.